|   |   |
|---|---|
| 1 |   |
| 2 |   |
| 3 |   |
| 4 |   |
| 5 |   |
| 6 |   |
| 7 |   |
| 8 |   |
| 9 |   |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEBARAH HENDRIX,

        Plaintiff,

   v.

MICHAEL J. ASTRUE,

        Defendant.

CASE NO. C11-5483 TSZ

ORDER

THIS MATTER comes before the Court on plaintiff's objections, docket no. 25, to the Report and Recommendation ("R&R") of United States Magistrate Judge James P. Donohue, docket no. 24.  With respect to plaintiff Debarah Hendrix's appeal from a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 401-433 and 1381-1383F, the R&R recommends that the Commissioner's decision be affirmed and that this case be dismissed with prejudice.

ORDER - 1

Plaintiff objects to the R&R's recommendation to affirm the Commissioner's analysis, which concluded that plaintiff does not suffer from a severe mental impairment. Plaintiff makes four objections: (1) The R&R improperly cites reasons not used by the ALJ to justify rejecting the opinion of Dr. Lindgren, Plaintiff's Objections at 7; (2) The ALJ's failure to discuss the opinion of Ms. Ragan was not harmless error, Plaintiff's Objections at 8; (3) The ALJ did not give sufficient reasons for rejecting the opinions of Drs. Gardner, Lewis, and Derbin, Plaintiff's Objections at 12; and (4) The ALJ did not give specific and legitimate reasons for rejecting the opinions of Drs. Carter and Alvord, Plaintiff's Objections at 14.

The Court agrees with plaintiff's first two objections, but the Court ADOPTS the remainder of the R&R as discussed below.  The first objection correctly points out that the ALJ did not specifically rely on plaintiff's lack of credibility or Ms. Muth's opinion to justify discounting Dr. Lindgren's opinion.[1]  The Court REJECTS that portion of the R&R, but ADOPTS the R&R's remaining analysis of Dr. Lindgren's opinion.[2]  The final two objections, relating to the opinions of Drs. Gardner, Lewis, Derbin, Carter, and

---

[1] The ALJ does note, however, that Dr. Lindgren's diagnoses are based on self-reports (AR 633) and highlights plaintiff's lack of credibility throughout her decision.

[2] In addition, the Court is satisfied that Dr. Lindgren's opinion was properly considered by the ALJ because: (i) Dr. Lindgren's treatment notes truly "make[] it difficult to judge the severity of the claimant's alleged mental impairment" (AR 634); and (ii) Dr. Lindgren does not offer an opinion directly on plaintiff's functional ability.  Plaintiff urges that Dr. Lindgren's diagnoses implicitly incorporate language from the DSM: "symptoms markedly interfere with occupational functioning or with usual social activities or relationships with others." Plaintiff's Objections, docket no. 25, at 6 (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 413 (4th ed., Text Revision, 2000)).  Even if this language is inferred from Dr. Lindgren's diagnoses, it does not speak to whether plaintiff's condition "significantly interferes with [her] physical or mental ability to do basic work activities," (20 CFR § 404.1520(c)) and does not constitute an opinion directly on her functional ability.

ORDER - 2

Alvord, reiterate arguments fully presented to Judge Donohue. <u>Compare</u> Plaintiff's Objections at 12-20 <u>with</u> Plaintiff's Opening Brief, docket no. 18, at 17-24. Judge Donohue gave these arguments full consideration, and the Court ADOPTS the portions of the R&R concerning Drs. Gardner, Lewis, Derbin, Carter, and Alvord.

The Court therefore addresses plaintiff's remaining objection that the ALJ's failure to discuss Ms. Hendrix's therapist's opinion was not harmless error. Having reviewed the R&R, plaintiff's objections, and the remaining record, the Court enters the following Order.

**Discussion**

    A.    **Standard of Review**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4). Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b); <u>see also</u> 20 C.F.R. § 404.1572. Step two asks whether the claimant has a severe impairment, or a combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). Step three involves a determination of whether any of claimant's severe impairments is equivalent to one that is listed in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant with an impairment that "meets or equals" a listed impairment for the requisite twelve-month duration is per se disabled and qualifies for benefits.

If the claimant is not per se disabled, then the question under step four is whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e) & (f) and 416.920(e) & (f). If the claimant can still perform past relevant work, then the claimant is not entitled to disability benefits and the inquiry ends there. On the other hand, if the opposite conclusion is reached, the burden shifts to the Commissioner at step five to prove that the claimant can make an adjustment to other work, taking into account the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(g) & 416.920(g). If the claimant cannot make such adjustment to other work, disability benefits may be awarded.

This Court's review of a decision reached via this five-step process is limited to assessing whether the Commissioner's denial of benefits is free of legal error and based on factual findings that are supported by substantial evidence. *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998); *see* 42 U.S.C. § 405(g).

The Ninth Circuit has held that "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Com'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006).

///

///

///

///

ORDER - 4

B.     **ALJ's Decision at Step Two**

The focus of plaintiff's objections to the R&R is the ALJ's decision at step two of the analysis.  The ALJ concluded that plaintiff did not have a severe mental impairment.[3]  AR 635.  This decision was based in part on failing to consider the opinion of her therapist, Ms. Ragan, regarding plaintiff's fitness to work.  The R&R concluded that the ALJ's failure to consider Ms. Ragan's opinion was error but that it was harmless error because (i) the ALJ thoroughly considered other evidence of record from other practitioners in the same facility, and (ii) Ms. Ragan's opinions would have been formed based on self-reports from an unreliable plaintiff.  R&R at 13.  The R&R concluded that under such circumstances, a reasonable ALJ could not have reached a different disability determination.  *Id.*  Plaintiff objects to the R&R's conclusion that the ALJ's failure to discuss her therapist's opinion was harmless error.  Plaintiff's Objections at 8.

The Court declines to accept the R&R's harmless error conclusion.  A reasonable ALJ could conclude that (i) the opinions of the other practitioners at Columbia River, who had less contact with plaintiff than Ms. Ragan, are inadequate substitutes for Ms. Ragan's opinion; (ii) Ms. Ragan's opinions were formed knowing that plaintiff was unreliable; (iii) Ms. Ragan's opinions were formed based on her direct observations of plaintiff in addition to her self-reports; and (iv) the Commissioner views as important the opinion of practitioners like Ms. Ragan.  Giving such credit to Ms. Ragan's opinion, a

---

[3] The ALJ did conclude that plaintiff had a severe knee disability, AR 631, so the ALJ's analysis at steps three through five considered only the knee condition.

ORDER - 5

reasonable ALJ could have reached a different conclusion at step two of the disability determination and found that plaintiff suffers from a severe mental impairment.

### 1. Other Practitioners at Columbia River

Janet Ragan, MA, LMHC, was a counselor associated with Columbia River Mental Health who was plaintiff's primary clinician and who saw her over 100 times from 2005 through the hearing.  AR 417-18, 420-28, 430-43, 445-53, 481-509, 873-901, 937-59, 1044-64, 1066-75.  As her primary clinician at Columbia River Mental Health, Ms. Ragan was contacted by Jerry Gardner, Ph.D. as part of the SSA disability review process, and Dr. Gardner noted: "Ms. Ragan hopes that the claimant can work part time but she will need a quiet setting and low stress work"; and that she "has a strong sense that the claimant is not ready for full time work as she would very likely decompensate with that much stress."  AR 769.

The Court disagrees with the R&R's conclusion that the ALJ's failure to consider Ms. Ragan's opinion is ameliorated because she considered evidence from two other practitioners from Columbia River, Dr. Lindgren and Ms. Muth.  R&R at 13.  Ms. Ragan was plaintiff's primary clinician at Columbia River Mental Health.  <u>See</u>, <u>e.g.</u>, AR 422. The ALJ considered records from ten visits with Dr. Lindgren, AR 419, 429, 444, 510-517, and one visit with Ms. Muth, AR 405-14.  Dr. Lindgren does not summarize or discuss any of Ms. Ragan's observations, and Ms. Muth only briefly mentions Ms. Ragan's treatment.  AR 408.  A reasonable ALJ could conclude that the notes from Dr. Lindgren and Ms. Muth do not incorporate or fairly reflect the findings and opinions of

ORDER - 6

Ms. Ragan and that they are not adequate substitutes for Ms. Ragan's voluminous treatment notes and her explicit opinion regarding plaintiff's ability to return to work.

### 2. Ms. Ragan's Knowledge of Plaintiff's Unreliability

The Court also disagrees with the R&R's conclusion that the failure to consider Ms. Ragan's opinion was harmless because "the necessary reliance on self-reporting that serves as the underpinning for Ms. Ragan's opinions." R&R at 13.  An ALJ could find that over the course of years of treatment, Ms. Ragan has learned that plaintiff's self-reports may not be accurate, sometimes remarking about her unreliability or observing behavior inconsistent with her statements: "[Ms. Hendrix] requested the presence of her caregiver ('helps me keep the facts straight.')" AR 1061.  "A great deal of the information seems to be not what she can actually remember, but what she has been told by family and by the newspaper reports." AR 484.  Plaintiff "continues to be concerned regarding… memory issues." AR 1050.  "Although she said she understood the paperwork and signed it, I feel that reviewing it again is warranted." AR 452.  "Debarah expressed being 'very, very tired.' However, she was alert and able to focus on and participate in the therapy process." AR 403.  If Ms. Ragan's opinion was formed with knowledge of plaintiff's unreliability, such unreliability is no reason to discount her opinion.  See Ryan v. Com'r of Soc. Sec. Admin., 528 F.3d 1194 (2008) ("[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations.").

ORDER - 7

### 3. Ms. Ragan's Direct Observation of Plaintiff

A reasonable ALJ could find that Ms. Ragan's opinions are trustworthy because they were formed not only by plaintiff's self-reports, but also through her direct observation.  During nearly every session, Ms. Ragan observed plaintiff's appearance, timeliness and mood, along with her ability to focus, maintain eye contact, or initiate conversation.  Ms. Ragan was able to observe plaintiff's demeanor across several sessions as she confronted both major and minor life events, such as her disability claim denials, AR 873-80, 1048-62, coping with the anniversary of past traumas, AR 481-82, 431, 433-34, 436, finding housing, AR 949-52, and attempting to volunteer, AR 435, 1054, 1058-62.  Ms. Ragan's extensive first-hand observation put her in a unique position among plaintiff's other providers and examining physicians to gauge plaintiff's capacity to cope with stress and in what type of setting.  A reasonable ALJ could give great weight to Ms. Ragan's assessment.

### 4. The Commissioner's Guidance Regarding Sources Who Are Not "Medically Acceptable Sources"

The Commissioner has noted that opinions such as those from Ms. Ragan are "important":

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as <u>impairment severity</u> and <u>functional effects</u>, along with the other relevant evidence in the file.

ORDER - 8

SSR 06-03p (emphasis added).  And such opinions should be evaluated using similar factors as used for acceptable medical sources:

- How long the source has known and how frequently the source has seen the individual;
- How consistent the opinion is with other evidence;
- The degree to which the source presents relevant evidence to support an opinion;
- How well the source explains the opinion;
- Whether the source has a specialty or area of expertise related to the individual's impairment(s), and
- Any other factors that tend to support or refute the opinion.

*Id.*

Consideration of these factors suggests Ms. Ragan's opinion could be given great weight.  First, Ms. Ragan treated plaintiff at greater frequency and over a much longer duration than any other practitioner or physician, from June 2005, AR 453, through 2010, AR 1044.  Second, Ms. Ragan's opinion suggesting plaintiff requires a low-stress work environment is supported by her ample treatment notes, including her observation: "It is difficult to identify [a job] which would not have the potential to trigger her PTSD." AR 879.  Further, Ms. Ragan's notes document plaintiff's difficulty answering questions related to her disability, even with her own lawyer, AR at 431, and that she even finds it "disturbing to relive the trauma through the answering of questions" of a medical provider, AR 491.  Plaintiff described a psychological evaluation for her disability claim that caused her "increased anger, headaches, and flashbacks" and she reported losing focus when asked repeated questions.  AR 1060.  Ms. Ragan's observations corroborate plaintiff's subjective reports, noting that plaintiff had dark circles under her eyes and "her body posture was tense as she related her experience." AR 1060.  Such anxiety and

ORDER - 9

distress is consistent with the observations of plaintiff's examining physicians and could explain her poor performance during psychological evaluations. The third and fourth factors are difficult to evaluate, as Ms. Ragan's opinion was captured by Dr. Gardner, and it is unclear the extent to which she presented evidence or how well she explained her opinion. Ms. Ragan's treatment notes, however, provide corroborating evidence as described above. Fifth, there is no evidence in the record to suggest that Ms. Ragan has a specialty in PTSD or depressive disorders, but the record does not reflect that any other providers or examining physicians have expertise in PTSD or depressive disorders. A reasonable ALJ could evaluate these factors and conclude that Ms. Ragan's opinion is entitled to significant weight.

Giving such weight to Ms. Ragan's opinion that plaintiff is capable of only part-time work, a reasonable ALJ could have reached a different conclusion at step two of the disability determination and found that plaintiff was significantly limited in her ability to do basic work activities. At step five of the disability determination process, inability to sustain work-related activities on a regular and continuing basis (i.e. 8 hours a day, for 5 days a week, or equivalent) results in a disability determination. <u>See</u> SSR 96-8p; <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 763 (9th Cir. 1989) (case predating SSR 96-8p, where the court concluded that "the capability to work only a few hours per day does not constitute the ability to engage in substantial gainful activity"). It follows that an inability to perform full-time work due to a mental impairment would qualify that

ORDER - 10

1 impairment as severe.[4] Thus, the Court cannot conclude that the error was harmless as to
2 step two of the disability determination process.

### C. ALJ's Decision at Steps Three through Five

The error at step two was propagated through steps three through five of the disability determination process. The ALJ did not consider a severe mental impairment at step three. At steps four and five, the vocational expert was not asked about limitations like those suggested by Ms. Ragan, and the assessments of plaintiff's Residual Functional Capacity, ability to perform past relevant work, and ability to make an adjustment to other work did not account for her opinion. Thus the Court cannot conclude that a reasonable ALJ would not have come to a different disability determination.

### Conclusion

The failure to consider Ms. Ragan's opinion was not harmless error. A reasonable ALJ, crediting Ms. Ragan's opinion, could have concluded plaintiff suffers from a severe mental impairment. This impairment could meet or equal a listed impairment or prevent plaintiff from performing her past relevant work, and the Commissioner failed to establish that with such impairment, she could adjust to other work.

For the foregoing reasons, the R&R, docket no. 24, is ADOPTED in part, MODIFIED in part, and REJECTED in part. The R&R's conclusion that the ALJ did not err in discounting Dr. Lindgren's opinion is MODIFIED to delete the references to Ms.

---

[4] *See also* *Smith v. Astrue*, 1:08-CV-91-JVB, 2009 WL 2840911 at *7 (N.D. Ind. Sep. 1, 2009) (holding that ALJ's conclusion that plaintiff did not have a severe impairment while failing to address treating physician's opinion that plaintiff was not capable of full-time work was not harmless error).

Muth's opinion and plaintiff's credibility.  The R&R's conclusion that the ALJ's failure to consider Ms. Ragan's opinion was error is ADOPTED, but the conclusion that such error was harmless is REJECTED.  The remainder of the R&R, finding no error with the ALJ's evaluation of other medical evidence, is ADOPTED.

This matter is hereby REMANDED to the Commissioner for further proceedings as to step two of the sequential process for determining whether plaintiff is disabled.  On remand, the ALJ is free to obtain additional evidence and/or supplemental testimony.  If a different conclusion as to step two is reached, the ALJ shall hold a supplemental hearing to consider anew (i) whether plaintiff's combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926), (ii) whether plaintiff is able to perform past relevant work, and (iii) whether the Commissioner has met the burden of establishing that plaintiff can make an adjustment to other work.

IT IS SO ORDERED.

The Clerk is directed to send a copy of this Order to all counsel of record and to Magistrate Judge Donohue.

Dated this 16th day of July, 2012.

THOMAS S. ZILLY
United States District Judge

ORDER - 12